THOMAS E. KENT, ESQ. (SBN107238)
WILLIAM K. HONG, ESQ. (SBN266690)
LEE & KENT
915 WILSHIRE BOULEVARD, SUITE 2050
LOS ANGELES, CALIFORNIA   90017
Telephone: (213) 542-4232
Facsimile: (213) 542-4234
Email: tkent@leekent.com

Attorneys for Debtor and Debtor In Possession,
Rio Rancho Super Mall, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re:

RIO RANCHO SUPER MALL, LLC,

   Debtor.

) Case No.: 6:11-bk-16835
)
) Chapter 11
) *Assigned to Hon. Catherine E. Bauer*
)
)
) DEBTOR'S EMERGENCY MOTION FOR
) ORDER APPROVING INTERIM USE OF
) CASH COLLATERAL; MEMORANDUM
) OF POINTS & AUTHORITIES IN SUPPORT
) THEREOF
)
) [DECLARATIONS OF ERIC SANG YUL
) KIM AND THOMAS E. KENT, ESQ. FILED
) CONCURRENTLY HEREWITH]
)
)
) Date:   March 3, 2011
) Time:   11:00 a.m.
) Ctrm:   303

TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY

JUDGE, TO SECURED CREDITORS WILSHIRE STATE BANK, PACIFIC CITY BANK,

SAEHAN BANK, AND BFG COMPANY AND TO THEIR ATTORNEY'S OF RECORD, TO

THE TWENTY (20) LARGEST UNSECURED CREDITORS AND OTHER PARTIES

REQUESTING SPECIAL NOTICE AND TO THE OFFICE OF THE UNITED STATES TRUSTEE:

  **PLEASE TAKE NOTICE THAT** Rio Rancho Super Mall, LLC Debtor and Debtor In Possession ("Rio Rancho" or "Debtor"), hereby moves the Court on an emergency basis for an Order authorizing its Interim Use of Cash Collateral of secured creditors, Wilshire State Bank ("WSB"), Pacific City Bank ("Pacific"), Saehan Bank ("Saehan") and BFG Company ("BFG") [WSB, Pacific, Saehan and BFG are sometimes hereinafter collectively referred to as "Secured Lenders"], to pay post petition payroll to the Debtor's employees, necessary operating expenses and to pay certain Chapter 11 administrative expenses pursuant to, inter alia, §363 of the Bankruptcy Code (11 U.S.C. §363), Rules 2002, 4001 and 9014 and 9019 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-2 and 9013-1(g) (the "Motion").

  This Motion is made on an emergency basis pursuant to the provisions of Local Bankruptcy Rule 9075-1(a) based on the exigent necessity for the Debtor to utilize Secured Lender's cash collateral in order to operate its business.

  This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the supporting Declarations of Eric S. Kim and Thomas E. Kent, Esq., filed concurrently herewith and such other and further oral and written evidence as may be presented to the Court at the time of the hearing.

  **WHEREFORE** the Debtor respectfully requests that this Court enter an Order:

(1)  Granting this Motion;

(2)  Authorizing its' interim limited use of cash collateral to pay post petition payroll to the Debtor's employees, it's necessary business operating expenses and to pay certain Chapter 11 administrative expenses in a monthly amount not to exceed ninety-five thousand one hundred and forty two dollars and eighteen cents ($95,142.18), as is more particularly set forth in the proposed budget attached as

Exhibit "P" to the accompanying Declaration of Eric Kim, Managing Member of the Debtor;

(3) Setting the Motion for Final Hearing; and,

(4) Granting such other and further relief as this Court deems just and proper under the circumstances.

Respectfully Submitted.

DATED: March 2, 2011

LAW OFFICES OF LEE & KENT

By: THOMAS E. KENT, ESQ.
Attorneys for Debtor and
Debtor In Possession,
Rio Rancho Super Mall, LLC

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..................................................4

I. SUMMARY OF RELIEF REQUESTED...........................................................4

II. INTRODUCTION.....................................................................................5

III. STATEMENT OF THE CASE....................................................................6

    A. Procedural Posture..........................................................................6

    B. Description of Debtor's Business........................................................6

    C. Property Valuation and Liens............................................................8

        1. Wilshire State Bank's Secured Claim – First Deed of Trust..............8

        2. Pacific City Bank's Secured Claim – Second Deed of Trust..............9

        3. Saehan Bank's Secured Claim – Third Deed of Trust....................10

        4. BFG Company's Claim – Fourth Deed of Trust...........................10

IV. RELIEF REQUESTED.............................................................................11

V. THE SECURED LENDERS WILL BE ADEQUATELY PROTECTED..............12

VI. THIS COURT HAS THE POWER TO AUTHORIZE THE USE OF CASH COLLATERAL ON AN EMERGENCY BASIS............................................15

VII. CONCLUSION......................................................................................16

# TABLE OF AUTHORITIES

Page

**CASES**

*In re McCombs Properties, VI, Ltd.,* 88 B.R. 261, 266 (Bankr.C.D.Cal., 1988)..............13

*United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988)...............................................................................................................13

*In re Dynaco Corp.,* 162 B.R. 389 (Bankr.D.N.H. 1993).........................................13

*In re Hoffman,* 51 B.R. 42 (Bankr.W.D.Ark. 1985).............................................13

*In re O'Connor,* 808 F.2d 1393 (10th Cir. 1987)............................................13, 14

*In re Stein,* 19 B.R. 458, 460 (Bankr.E.D. Pa. 1981).............................................14

*In re Federal National Mortgage Association,* 153 B.R.204, 215 (Bankr.N.D.Ill. 1993)...........................................................................................................14

*In re Constable Plaza Associates,* 125 B.R. 98, 105 (Bankr.S.D.N.Y. 1991)..........14, 15

*In re Prichard Plaza Associates Ltd. Partnership,* 84 B.R.289, 302 (Bankr.D.Mass.1988)..........................................................................................15

**STATUTES**

11 U.S.C. §101(51B)...............................................................................................6

11 U.S.C. §361(1)-(3)............................................................................................13

11 U.S.C. §363.................................................................................................2, 15

11 U.S.C. §363(c)(2)..............................................................................................11

11 U.S.C. §363(c)(3).........................................................................................11, 12

11 U.S.C. §363(e)..............................................................................................11, 13

11 U.S.C. §1107(a)..................................................................................................6

11 U.S.C. §1108.....................................................................................................6


**RULES**

Federal Rules of Bankruptcy Procedure Rule 2002..............................................2

Federal Rules of Bankruptcy Procedure Rule 4001..............................................2

Federal Rules of Bankruptcy Procedure Rule 4001(b).........................................4

Federal Rules of Bankruptcy Procedure Rule 4001(b)(2)..................................11

Federal Rules of Bankruptcy Procedure Rule 4001(c)......................................15

Federal Rules of Bankruptcy Procedure Rule 9014............................................2

Federal Rules of Bankruptcy Procedure Rule 9019............................................2

Local Bankruptcy Rule 4001-2......................................................................2, 15

Local Bankruptcy Rule 9013-1(g)........................................................................2

Local Bankruptcy Rule 9075-1(a)........................................................................2

## MEMORANDUM OF POINTS & AUTHORITIES

### I.

### SUMMARY OF RELIEF REQUESTED

Pursuant to Federal Rules of Bankruptcy Procedure 4001(b) the Debtor hereby provides its concise statement of the relief requested.

By way of this Motion, the Debtor seeks Court authority to utilize up to ninety-five thousand one hundred forty-two dollars and eighteen cents ($95,142.18) per month of Secured Lender's cash collateral to pay the ordinary and necessary operating expenses of its business, as is more particularly set forth in the Debtor's proposed budget for use of cash collateral ("Budget"), attached as Exhibit "P" to the accompanying declaration of Eric Kim, managing member of the Debtor.

The proposed Budget provides for the following uses of cash collateral, inter alia:

1. Monthly payments to senior lien holder WSB in the amount of thirty five thousand dollars ($35,000.00)[1] ;

2. For payment of monthly payroll expenses in the aggregate sum of ten thousand eight hundred dollars ($10,800.00);

3. For payment of costs of operation, including, insurance, security guard services, maintenance and utilities in the amount of forty thousand five hundred and seventeen dollars and eighteen cents ($40,517.18).

4. For payment of administrative expenses, including an allocation for legal, accounting, taxes trustee's fees in a an amount not to exceed eight thousand eight hundred twenty-five dollars ($8,825.00); and

---

[1] This proffered sum is approximately equal to the monthly interest accruals on the Debtor's loan with WSB.

5. For payment to junior lien holders (Pacific, Saehan and BFG ) a monthly amount, in order of priority of, any available funds after exhaustion of the expenses as state above.[2]

For the reasons set forth in this Motion, , the Debtor respectfully submits that its proposed usage of cash collateral is reasonable, necessary and appropriate for the operation of its business and is in the best interests of the Debtor, its creditors and its bankruptcy estate.

## II.

## INTRODUCTION

The Debtor owns, manages and operates a commercial property known as the Rio Rancho Super Mall that is utilized as an indoor swap-meet and retail mall ("Rio Rancho" or "Property"). The Property is comprised of approximately one hundred thousand (100,000) square feet of space that will accommodate up to eighty-seven (87) commercial tenants and is located at 25211 Sunnymead Boulevard, Moreno Valley, California 92553.[3]

The rents derived from the operation of the Property are the Debtor's primary source of income. As more fully described in the accompanying declaration of Eric Kim, managing member of the Debtor ("Kim Declaration"), the Debtor presently has sixty-one (61) retail tenants who are supposed to be paying aggregate total monthly rent of one hundred nine thousand three hundred and forty three dollars and seventy five cents ($109,343.75). Due to the current economic downturn and recession, many tenants of the Property are experiencing financial hardship and are unable to make full or timely rent payments. As a result, the Debtor's monthly income has dramatically declined. As stated in the Kim Declaration, the Debtor's actual rental

---

[2] The proposed budget does not presently provide for payment of any specific amount to the junior lien holders since the projected revenue stream from operations is insufficient.
[3] Color photographs of the interior and exterior of the Property are collectively attached as Exhibit "B" to the accompanying declaration of Eric Kim.

collections have only averaged between ninety-three thousand dollars ($93,000) and ninety-eight thousand dollars ($98,000) monthly over the past ninety (90) days.[4]

The Debtor's use of the Secured Lenders' cash collateral is essential to its' on-going operations. Absent the use of such cash collateral, an effective reorganization will neither be probable nor feasible.

### III.

### STATEMENT OF THE CASE

A.    **Procedural Posture**

This case was commenced on **March 2, 2011** (the "Petition Date") by the filing of the Debtor's voluntary petition under Chapter 11 of the Bankruptcy Code.

The Debtor is operating its business as a Debtor in Possession pursuant to Bankruptcy Code §§ 1107(a) and 1108 since the Petition Date.

This bankruptcy case is a single-asset real estate case within the meaning of §101(51B) of the Bankruptcy Code. Substantially all of the gross income of the Debtor is earned from the operation of the Property.

B.    **Description of Debtor's Business**

The Debtor owns and is engaged in the business of operating, managing and maintaining Rio Rancho as an indoor "swap meet" and retail mall.

The Debtor is a California limited liability company organized in the State of California on June 18, 2005. The Debtor has two (2) members who together own one hundred percent (100%) of the company. These member/owners are Eric Sung Yul Kim ("Mr. Kim"),

---

[4] In addition to the monthly rent collections, the Debtor derives some minimal revenue of approximately two thousand five hundred dollars ($2,500) per month from ATM machines, vending and video game machines located at the Property.

who owns eighty nine and one half percent (89.5%) and is the managing member of the company, and his wife, Kwang Sun Kim who owns twelve and one-half percent (12.5%).

Day to day operations of the Property are supervised by Mr. Kim and managed by Mr. Dennis Park, the full time on-site manager.

Neither the Debtor nor its owners or managers have any history of prior bankruptcy filings.

Rio Rancho derives the majority of its monthly revenue from renting out retail space at the Property. The Property will accommodate up to eighty-seven (87) retail tenants; however, there are presently only sixty- one (61) tenants at the Property. Each of these tenants operates their own retail business that range from clothing and jewelry stores to furniture and electronics stores.

The Debtor is responsible for the maintenance, security and functionality of the Property in order to provide the tenants and their customers with a comfortable and safe marketplace environment. Among other things, the Debtor maintains and is responsible for payment of utilities, including water, electricity, air conditioning, heating security guard services and janitorial and maintenance services.

The Debtor's operations are necessarily dependent upon on its' collection and use of rent monies from tenants of the Property. Unfortunately, as is discussed in the Kim Declaration, due to the economic downturn, many of the tenants of the Property are suffering decreased business resulting in their inability to pay rent in full and/or on time. Consequently, the Debtor has been experiencing shortfalls in its cash flow.

The Debtor's financial statement for the period ending December 31, 2010 reflects that the Debtor experienced an operating loss of sixty one thousand one hundred and ninety eight dollars 07/100 (-$61,198.07). **(See Exhibit "F" to Eric Kim Declaration).**

C. **Property Valuation and Liens**

The Debtor purchased the Property for the sum of eight million nine hundred thousand dollars ($8,900,000) in 2005. The Debtor is informed and believes and based thereon alleges that the current fair market value of the Property, as improved, does not exceed seven million, five hundred thousand dollars ($7,500,000).[5]

The encumbrances on the Property are comprised of the four (4) deeds of trust that are more specifically described in Kim Declaration, as follows:

**1. Wilshire State Bank's Secured Claim – First Deed of Trust**

The Debtor is indebted to WSB pursuant to that certain secured promissory note, dated April 6, 2006, in the original principal amount of ten million, four hundred twenty-two thousand dollars ($10,422,000.00) (hereafter the "WSB Loan"). WSB purchased this loan from the original lender, Mirae Bank sometime prior to October, 2010. The WSB Loan is secured by a first Deed of Trust on the Property, dated April 6, 2006, and recorded April 18, 2006 in the official records of Riverside County as Instrument No. 2006-0278164 granted by Debtor to original lender Mirae Bank[6] as well as by an Assignment of Rents (hereinafter collectively the WSB Loan Documents).

On or about October 8, 2010, the Debtor and WSB entered into a Change in Terms Agreement that provides, in pertinent part, for:

i) six (6) monthly consecutive principal and interest payments in the initial amount of forty five thousand dollars ($45,000.00), beginning October 6, 2010;

ii) ii) twenty four (24) consecutive principal and interest payments in the initial amount of fifty seven thousand two hundred and ninety one dollars and eighty

---

[5] The Debtor is in the process of obtaining a formal appraisal that will be submitted to the Court prior to any final hearing on this Motion.

[6] True and correct copies of the WSB Loan Documents are attached as Exhibits G, H and I to the Kim Declaration and are incorporated herein.

    two cents ($57,291.82), beginning April 6, 2011 with an initial interest rate of 3.625%; and

  iii)  one principal and interest payment of nine million ninety eight thousand two hundred and fifty two dollars and forty nine cents ($9,098,252.49) on April 6, 2013, the maturity date of the WSB Loan.

Despite the Change In Terms Agreement, the Debtor's cash flow has been insufficient to enable it to stay current on the WSB Loan. As of the Petition Date, the Debtor is in default of its payment obligations to WSB.

WSB has recorded a Notice of Default and has accelerated and demanded full payment of the WSB Loan in a sum of not less than the nine million eight hundred twelve thousand five hundred three dollars and forty-four cents ($9,812,503.44). The WSB Loan is guaranteed by Eric Kim and Kwang Sung Kim, its members and owners.

### 2. Pacific City Bank's Secured Claim – Second Deed of Trust

The Debtor is indebted to Pacific pursuant to that certain Secured Promissory Note dated January 12, 2007, in approximate sum of eight hundred thousand dollars s ($800,000.00) (the "Pacific Loan"). The Pacific Loan is collateralized by, inter alia, a second deed of trust on the Property recorded January 18, 2007 in the official records of Riverside County as Instrument No. 2007-0043627 and by an Assignment of Rents (hereinafter the "Pacific Loan Documents").[7]

As of the Petition Date, the Debtor is in default of its payment obligations for the Pacific Loan for at least the past ninety (90) days. Pacific has not yet recorded a Notice of Default or taken any other collection action against the Debtor.

The Pacific Loan is guaranteed by Eric Kim and Kwang Sung Kim, the Debtor's members and owners.

---

[7] True and correct copies of the Pacific Loan Documents are attached as Exhibits J and K to the Kim Declaration.

3. **Saehan Bank's Secured Claim – Third Deed of Trust**

The Debtor is indebted to Saehan pursuant to that certain Secured Promissory Note dated December 26, 2007, in the original principal amount of two hundred thousand dollars ($200,000.00)/ (hereafter "Saehan Loan"). The Saehan Loan is collateralized by a Third Deed of Trust on the Property, dated December 26, 2007, recorded in the official records of Riverside County and by an Assignment of Rents. [8]

As of the Petition Date, the Debtor is in default of its payment obligations under the Saehan Loan in a sum of not less than one hundred ninety one thousand dollars ($191,000.00) exclusive of interest, attorney's fees and costs.

To date, Debtor has not received a Notice of Default no nor any other communication from Saehan declaring its intention to foreclose on its Third Deed of Trust. The Saehan Loan is guaranteed by Eric Kim and Kwang Sung Kim.

4. **BFG Company – Fourth Deed of Trust**

The Debtor is indebted to BFG Company pursuant to that certain Secured Promissory Note, dated October 16, 2008, in the original principal amount of one million one hundred thousand dollars ($1,100,000.00) (hereafter "BFG Note"). The BFG Note is secured by a Fourth Deed of Trust on the Property, dated October 16, 2008, and recorded in the official records of San Bernardino County granted by Debtor to BFG Company. [9]

As of the Petition Date, the Debtor is in default of its payment obligation under the BFG Note. [10]

---

[8] True and correct copies of the Saehan Loan Documents are attached as Exhibits "M" and "N" to the Kim Declaration and are incorporated herein.

[9] True and correct copies of the BFG loan documents are collectively attached attached as Exhibit "N" to the Kim Declaration and are incorporated herein.

[10] The BFG Note matured on March 16, 2009.

Company vs. Eric Sang Yul Kim, et al., bearing case no. BC413017. Judgment was entered in favor of BFG and against the guarantors of the BFG Loan on April 30, 2010. BFG has not taken any legal action against the Debtor and has not sought to foreclose on its Fourth Deed of Trust.

## IV.

## **RELIEF REQUESTED**

By this Motion, Debtor requests the Court enter an order authorizing its use up to ninety-five thousand one hundred forty two dollars and eighteen cents ($95,142.18) of Secured Lenders' cash collateral on a monthly basis for the ordinary and necessary expenses of its business.

§363(c)(2) of the Bankruptcy Code provides that: "

> *(2)  The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subjection unless...*
> *(B)  the court, after notice and hearing, authorizes said use; sale or lease in accordance with the provisions of this Section...*

Further, §363(e) of the Bankruptcy Code provides that the Court may condition said use, sale or lease as is necessary to provide adequate protection to Lenders.

The Debtor, by way of this Motion, proposes to implement terms that will ensure that its Secured Lenders, and in particular, WSB the senior secured lender, will be adequately protected, as follows:

1. The Property is and will remain fully and properly insured;[11]

2. The Debtor proposes to make monthly interest only payments to its senior secured lender, WSB, in the amount of thirty five thousand dollars ($35,000.00);

3. Provide monthly payments to junior lien holders, in order of priority, of any available funds after the monthly business expenses have been paid for; and

---

[10] The Debtor was not named as a party to this lawsuit.

[11] A certificate of insurance is attached as Exhibit "C" to the Kim Declaration and is incorporated herein.

4. The Debtor's financial books and records will be made available for inspection and audit by Secured Lenders', or any of them, upon reasonable request.

5. The Debtor will continue to provide for the management and maintenance of the Property to ensure that there will be no diminution of its market value.

The Debtor respectfully submits that without the use of cash collateral, there will be little, if any, probability or feasibility of an effective reorganization. Accordingly, this Court is respectfully requested to authorize the Debtor to utilize Secured Lenders' cash collateral in accordance with the Budget attached as Exhibit "Q" pending a final hearing on this Motion.

V

**THE SECURED LENDERS WILL BE ADEQUATELY PROTECTED**

The Debtor's proposal for its interim limited use of cash collateral is conditioned upon the Secured Lenders being adequately protected. In that regard, the Debtor has proposed the following, inter alia:

(1) preventing damage and/or diminution in value of the Property through liability and other insurance coverage;

(2) making monthly interest only payments to the senior lien holder, WSB, in the amount of thirty five thousand dollars ($35,000.00);[12]

(3) monthly payments to junior lien holders, in order of priority, if and when funds become available for this purpose;

(4) providing Secured Lenders with access to the Debtor's financial books and records and business premises; and

(5) continuing to properly maintain the Property in all material respects for the benefit of the Debtor, its tenants and the Secured Lenders.

---

[12] The Debtor is not currently proposing to make monthly payments to Pacific, Saehan or BFG as there is insufficient cash flow from operations and because the WSB lien exceeds the current fair market value of the Property.

Section 363(e) of the Bankruptcy Code provides in pertinent part:

> "…on request of an entity that has an interest in property used, sold, or leased, or proposed to be use, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary ***to provide adequate protection of such interest…***" (emphasis added)

11 U.S.C. §363(e).

11 U.S.C. §361 discusses what constitutes "adequate protection" in Section 361, in relevant part, as follows:

"(i) cash payment or periodic cash payments to entity with an interest or (ii) provide to such entity with interest an additional or replacement lien or (iii) the "indubitable equivalent of such entity's interest in such property."

The Court in *In re McCombs Properties, VI, Ltd.*, citing to U.S. Supreme Court's case *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) held that, "[t]he phrase "interest in property" in §363(e) means the value of the collateral…[i]f the value is likely to diminish during the time of the use, adequate protection must be provided by debtor." 88 B.R. 261, 266 Bkrtcy.C.D.Cal.,1988.

Accordingly, the Debtor must provide some form of adequate protection to prevent the diminution of Property's value. And the Debtor thus bears the burden to prove by a preponderance of the evidence that Secured Creditor's interest (value of the Subject Property) is adequately protected. *In re McCombs Properties, VI, Ltd.*, 88 B.R. 261, 268 Bkrtcy.C.D.Cal.,1988.

Further, Bankruptcy Courts have continually opinioned, where possible, the Court should resolve issues presented in favor of reorganization rather than to force liquidation because the business cannot use cash or other property to operate for a short time. *In re Dynaco Corp.*, 162 B.R. 389 (Bankr. D. N.H. 1993); *In re Hoffman*, 51 B.R. 42 (Bankr. W.D.Ark. 1985). The Court in *In re O'Connor* stated:

> Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtor to achieve that end. Thus, while interests of the secured creditor…are of concern to the court, the interest of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to **insure the value of the collateral** will be preserved. Yet prior to confirmation for a plan of reorganization, the test of that protection is not by the same measurements applied to treatment of a secured creditor in a proposed plan. In order to encourage the Debtor's efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in apply the adequate protection standard.

808 F.2d 1393 (10th Cir. 1987). (emphasis added)

As mentioned in the accompanying Kim Declaration, the Debtor maintains the Property's utilities and its' overall aesthetics and provides for its security. The unavailability of cash collateral will prejudice the Debtor's inability to maintain the functionality of the Property and will diminish its' fair market value as well as the Secured Creditor's interests therein.

The use of cash collateral is vital to ongoing operations and to ensure that Lenders' secured interests are adequately protected. In *In re Stein,* the Court allowed a debtor to use cash collateral even where the bank was under-secured and had no cushion for protection. The court in *Stein* found that the use of cash collateral was necessary to the continued operations of the debtor and "the creditor's secured position can only be enhance by the continued operation of the [debtor's business]." 19 B.R. 458, 460 (Bankr. E.D. Pa. 1981).

Similarly, the Court in *In re Federal National Mortgage Association* following a line of reasoning from various Courts and denying Secured Creditor's Motion to Prohibit Use of Cash Collateral, held that the "…required adequate protection of Rents *is satisfied* to the extent the Debtor reinvest the Rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased." (citing: *In re Constable Plaza Associates,* 125 B.R. 98, 105 (Bankr.S.D.N.Y.1991) ("debtor's plowing back rents solely

for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Prichard Plaza Associates Ltd. Partnership,* 84 B.R. 289, 302 (Bankr.D.Mass.1988) (stating that adequate protection, if required, would be satisfied if the debtor applied rents entirely to the operation and maintenance of the property); (further citations omitted). 153 B.R.204, 215 (Bankr. N.D.Ill.,1993).

The Debtor's utilization of the cash collateral is solely for the purposes of maintaining the necessary and the continual operation of the Commercial Property. The Debtor, as referenced in the Kim Declaration, uses the current collection of rents for the purposes of paying necessary business expenses, including but not limited to: employee payroll, utilities, taxes, insurances and maintenance fees. As such, the Secured Lender's interest in the subject property *and* its' cash collateral is adequately protected where the Debtor's income is utilized exclusively to maintain the continual operation of the Property.

## VI.

**THIS COURT HAS THE POWER TO AUTHORIZE THE USE OF COLLATERAL ON AN EMERGENCY BASIS**

Pursuant to Bankruptcy Rule 4001(c), et seq. and Local Bankruptcy Rule 4001-2 and the provisions of 11 U.S.C. §363, et seq., the Court, inter alia, has the authority to grant the Debtor limited interim authority to utilize cash collateral on an emergency basis.

The Debtor respectfully submits that the entry of an Order granting this Motion will enable the Debtor to continue its business operation and maintain the Property effectively pending final hearing and confirmation of its plan of reorganization. Absent the granting of this motion, there is little to no probability that the Debtor will be able to survive.

As set forth in the accompanying Declaration of Debtor's Counsel, notice of this Emergency Motion has been provided to the Office of the United States Trustee, Secured

Creditors, and creditors and parties requesting special notice in this case and all other parties in interest.

The Debtor respectfully submits that the interests of justice and equity warrant entry of an order granting this Emergency Motion.

## VII.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an Order:

(1) Granting this Motion;

(2) Authorizing its' interim limited use of cash collateral to pay post petition payroll to the Debtor's employees, necessary business operating expenses and to pay certain Chapter 11 administrative expenses.

(3) Granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: March 2, 2011

LEE & KENT

By: THOMAS E. KENT, ESQ.
Attorneys for Debtor and Debtor in Possession,
Rio Rancho Super Mall, LLC